25CA1825 Peo in Interest of DGMT 07-23-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1825
City and County of Denver Juvenile Court No. 23JV30901
Honorable Laurie Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D.G.M.T., Jr. and X.F.I.T., Children,

and Concerning J.I.Y. and D.G.T.,

Appellants.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

---

Miko Brown, City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant, J.I.Y

Ainsley Baum, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant D.G.T.

¶ 1     J.I.Y. (mother) and D.G.T. (father) appeal the judgment terminating their parent-child legal relationships with D.G.M.T. and X.F.I.T. (the children).  We affirm.

## I.     Background

¶ 2     In October 2023, the Denver Department of Human Services received a report that D.G.M.T. had tested positive for amphetamine at birth.  After an investigation, the Department discovered that the parents had a history of previous referrals related to substance use issues.  The Department removed the children and filed a petition in dependency or neglect.

¶ 3     The parents made no-fault admissions to the petition, and the juvenile court adjudicated the children dependent or neglected.  The court then held dispositional hearings and adopted treatment plans for the parents.  Both treatment plans required the parents to provide stable housing, attend family time, and address their substance abuse and mental health issues.

¶ 4     In June 2025, the Department moved to terminate the parents' parental rights.  The juvenile court held an evidentiary hearing in August 2025.  After hearing the evidence, the court

terminated the parent-child legal relationships between the parents and the children.

## II. CICWA/ICWA Compliance

¶ 5 Mother asserted in her opening brief that the Department failed to exercise due diligence in determining whether the children were Indian children as defined under the Colorado Indian Child Welfare Act (CICWA) and the federal Indian Child Welfare Act (ICWA). Thereafter, we issued a limited remand order directing the juvenile court to make appropriate inquiries and findings under CICWA and ICWA. The juvenile court issued a new order finding, after appropriate inquiry, that the children were not Indian Children as defined under CICWA and ICWA . Neither party challenges this finding so we do not address CICWA or ICWA further.

## III. Reasonable Efforts

¶ 6 The parents first assert that the juvenile court erred by finding that the Department made reasonable efforts. We disagree.

### A. Standard of Review and Applicable Law

¶ 7     In determining fitness under section 19-3-604(1)(c), C.R.S. 2025, the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent and reunite the family.  §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2025.  "Reasonable efforts" is defined as the "exercise of diligence and care" to reunify parents with their children, and the department's reasonable efforts obligation is satisfied if it provides services in accordance with section 19-3-208.  § 19-1-103(114).

¶ 8     When determined "necessary and appropriate," the department must provide (1) screening, assessments, and individual case plans; (2) home-based family and crisis counseling; (3) information and referral services; (4) family time; and (5) placement services.  § 19-3-208(2)(b).  The juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire

treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.

¶ 9    Whether a department satisfied its obligation to make reasonable efforts presents a mixed question of fact and law. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8. We review the juvenile court's factual findings for clear error, but we review de novo the court's legal determination based on those findings. *Id.*

## B. Analysis

¶ 10    The juvenile court determined that the Department made reasonable efforts to rehabilitate the parents and reunify them with the children. Specifically, the court found that the Department made efforts to locate the parents, connect with them, and offer them services to complete their treatment plans.

¶ 11    The record supports the juvenile court's findings. For example, the caseworker testified that the Department provided the parents with parent advocates and life skills workers to assist them with housing. The record also shows that the Department provided the parents with family time services, both during their incarceration (if possible) and while they were in the community. And the caseworker said that the Department referred the parents

4

to dual diagnosis evaluations for their mental health and substance abuse issues. Overall, the record indicates that the parent minimally participated in these services. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12 (noting that the court may consider a parent's unwillingness to participate in services).

¶ 12    Despite this record, mother asserts, for the following three reasons, that the Department failed to make reasonable efforts. We are not persuaded.

¶ 13    First, mother contends that the Department failed to assist her with barriers to communicating with the services providers. For example, she maintains that the Department should have provided her with a phone. But we reject her assertion because (1) while the record indicates that mother frequently changed phone numbers, it does not show that she lacked access to a phone; and (2) even if she needed a phone, nothing in section 19-3-208 requires the Department to provide one, especially when she did not request it. Mother also contends that the caseworker should have simply contacted the treatment providers with mother during their meetings. We disagree because, once the Department makes the necessary referrals, as it did here, it is the parent's responsibility to

utilize those services to become fit. *See People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 14 Second, mother argues that the Department failed to provide her with family time services. *See* § 19-3-208(2)(b)(IV). We disagree. Among other things, the record shows that the Department made referrals for family time services both when mother was incarcerated and when she was in the community. When mother was in the community, her providers discharged her from services because she did not participate. Again, mother blames the Department for her inability to communicate with her family time providers, but as noted above, once the Department provided her with the necessary services described in section 19-3-208, it was her responsibility to utilize those services. *See J.C.R.*, 259 P.3d at 1285; *see also People in Interest of E.D.*, 2025 COA 11, ¶ 40 (noting that a department can satisfy its obligation under section 19-3-208(2)(b)(IV) by making family time services available, "even if those services don't successfully result in face-to-face contact").

¶ 15 Third, mother asserts that the Department failed to make reasonable efforts because it did not request releases of information

6

from mother's parole officer or Aurora Mental Health (AMH). Although the caseworker admitted that she did not make efforts to get releases of information from parole or AMH, we are not convinced that any failure to do so amounted to a lack of reasonable efforts. Indeed, mother provides no legal authority for her contention, and we see no basis for reversal where, as here, the Department made all the necessary referrals for mother to comply with her treatment plan.

¶ 16 Father also asserts that the Department failed to make reasonable efforts for three reasons. Again, we are not persuaded.

¶ 17 First, father contends that the Department did not do enough to provide him with a dual diagnosis evaluation. The record shows that the Department made a referral, but father did not complete the evaluation while he was in the community. The caseworker said that the evaluators would not complete the evaluation while someone was incarcerated. Even so, the record shows that the caseworker made efforts to get father services in the jail but learned that father needed to request those services directly by sending a "kite." She told father about this process, but he did not follow through. Based on this record, we cannot say that the Department

failed to make reasonable efforts. *See* § 19-3-208(2)(b)(III) (requiring a department to provide information about available resources).

¶ 18 Second, father argues that the caseworker should have provided him with assistance in submitting the kite because he had a learning disability. As noted above, the Department provided father with information about the available services, *see id.*, and it was father's responsibility to utilize those services, *see J.C.R.*, 259 P.3d at 1285. Thus, the Department met its burden. However, to the extent that father argues that the Department failed to make reasonable efforts because it did not provide reasonable accommodations for his disability — as required by the Americans with Disabilities Act of 1990 (ADA) — we decline to address his argument. Although the petition noted that father might have a learning disability, father never raised this issue in the juvenile court. *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 18. As a result, the court made no findings about the ADA's applicability, and we cannot make findings of fact. *See id.* at ¶ 21.

¶ 19 Finally, father maintains that the Department should have coordinated with his attorney's social worker to assist him with housing. But father does not cite any testimony or evidence

8

admitted during the termination hearing to support these arguments; instead, he points to unsworn statements made by his attorney before the termination hearing. We do not consider such statements. *See DA Mountain Rentals, LLC v. The Lodge at Lionshead Phase III Condo. Ass'n Inc.*, 2016 COA 141, ¶ 39 (appellate courts cannot accept unsworn contentions made by a party's lawyer where there is no evidence in the record to support them).

### IV. Less Drastic Alternative

¶ 20 The parents next contend that the juvenile court erred by finding that there was no less drastic alternative to termination. We disagree.

### A. Standard of Review and Applicable Law

¶ 21 Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986). In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3).

¶ 22    To aid the juvenile court in determining whether there is a less

drastic alternative to termination, the department must evaluate a

reasonable number of people the parents identify as placement

options. *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App.

2004). But the department is not obligated to "independently

identify and evaluate other possible placement alternatives." *People

in Interest of Z.P.*, 167 P.3d 211, 215 (Colo. App. 2007).

¶ 23    A viable less drastic alternative must do more than adequately

meet a child's needs; rather, it must be in the child's best interests.

*People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the

juvenile court considers a less drastic alternative but finds instead

that termination is in the child's best interests, it must reject the

less drastic alternative and order termination. *Id.* at ¶ 32. Under

those circumstances, we must affirm the court's decision if its

findings are supported by the record. *People in Interest of B.H.*,

2021 CO 39, ¶ 81.

### B. Analysis

¶ 24    The juvenile court found that there was no less drastic

alternative to termination and that "all known possible alternatives

ha[d] been adequately explored." In support, the court noted that

10

(1) the kinship provider would not accept an allocation of parental responsibilities (APR) and wanted to adopt the children, *see S.N-V.*, 300 P.3d at 920 (allowing the court to consider the placement options preference for adoption); and (2) the children needed permanency that only an adoption could provide, *see People in Interest of Z.M.*, 2020 COA 3M, ¶ 30 (noting that an APR is not a less drastic alternative if the child needs the permanency of an adoption). As explained below, the record supports the court's findings.

¶ 25 First, the record shows that an APR to the kinship provider was not a less drastic alternative to termination. The caseworker explained that an APR was not a less drastic alternative, considering that the parents had APRs with their other children but had not engaged with those children. She also said that the kinship provider had, at one time, considered an APR with the parents, but she had changed her mind and asked to adopt the children. In the caseworker's opinion, termination and adoption was in the children's best interests based on the length of time that the children had been out of the home and the parents' lack of

success in establishing a relationship with the children during that time.

¶ 26    Second, the record shows that the Department investigated a reasonable number of people suggested by the parents as placement option. *See D.B-J.*, 89 P.3d at 532. At the beginning of the case, X.F.I.T. was living with a maternal relative, but she changed placement to the current kinship provider, who was caring for D.G.M.T. already. The record shows that other relatives were caring for the parents' other children and that the current kinship provider could be a permanent option for the children. The caseworker also testified that she spoke with paternal grandmother, who did not know of any paternal relatives who could care for the children. The caseworker said that she did not initiate a home study for paternal grandmother because neither father nor paternal grandmother requested one.

¶ 27    Despite this record, mother asserts that termination was not in the children's best interests because "nothing in the record suggests that the kinship home would not provide the permanency the children needed." But it is undisputed that the kinship provider did not want to participate in an APR. And mother does

12

not explain how the juvenile court could have forced the kinship provider to accept an APR. *See People in Interest of P.D.*, 580 P.2d 836, 838 (Colo. App. 1978) (noting that a court cannot enter an APR to an unwilling party who is not the child's parent).

¶ 28    The parents also assert that the Department failed to adequately investigate paternal grandmother for placement. We disagree because the record shows that neither father nor paternal grandmother requested placement, and the Department did not have an independent obligation to assess paternal grandmother for placement under those circumstances. *See Z.P.*, 167 P.3d at 215.

V.    Ineffective Assistance of Counsel

¶ 29    Finally, father argues that his counsel provided ineffective assistance. We discern no basis for a remand.

¶ 30    In evaluating a claim of ineffective assistance of counsel in a dependency or neglect proceeding, the parent must show that (1) counsel's performance was outside the wide range of professionally competent assistance; and (2) counsel's deficient performance prejudiced the parent — that is, a reasonable probability exists that but for counsel's unprofessional errors, the proceeding's outcome would have been different. *A.R. v. D.R.*, 2020 CO 10, ¶ 60. "If the

parent fails to establish either prong of this test, the claim fails."
*People in Interest of C.B.*, 2019 COA 168, ¶ 26.

¶ 31 An appellate court must remand for an evidentiary hearing if the parent's allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. *A.R.*, ¶ 63. But if the parent's allegations lack sufficient specificity, the appellate court may summarily deny their ineffective assistance of counsel claim. *Id.*

¶ 32 At the termination hearing, the caseworker testified that father had undergone a competency evaluation in his criminal case. Father now maintains that, when his attorney learned that he had been evaluated for competency in the criminal case, the attorney should have requested a continuance so that the juvenile court could appoint him a guardian ad litem (GAL). *See* § 19-1-111(2)(c), C.R.S. 2025 (allowing a court to appoint a GAL for a parent with "a behavioral or mental health disorder or an intellectual and developmental disability"); *see also People in Interest of T.M.S.*, 2019 COA 136, ¶ 9 (noting that the purpose of a GAL is "to facilitate communication between the parent and counsel and help the parent participate in the proceeding").

¶ 33     Even assuming, without deciding, that counsel provided deficient performance, father's allegations are not sufficient to prove prejudice.  *See A.R.,* ¶ 63.  Father alleges that, because he was found incompetent to proceed in the criminal case, the juvenile court would have likely appointed a GAL and continued the termination hearing if counsel had requested it.  But father does not allege that, had counsel ensured that he had a GAL, the outcome of the case would have been different.  Said another way, father has not sufficiently alleged that a GAL's assistance would have resulted in a different outcome — namely, that the court would have denied the termination motion.

¶ 34     We therefore conclude that father has not raised sufficiently specific and compelling allegations to constitute a prima facie showing of ineffective assistance of counsel.  *See A.R.,* ¶ 63; *see also People v. Sherman,* 172 P.3d 911, 914 (Colo. App. 2006) (noting that a claim that is too speculative does not satisfy the prejudice prong).  Thus, we decline to disturb the termination judgment.

## VI.     Disposition

¶ 35     The judgment is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.

15